WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eduardo Alzate, et al., | No. CV-13-02129-PHX-BSB |
| Plaintiffs, | **ORDER** |
| v. | |
| Creative Man Painting LLC, et al., | |
| Defendants. | |

Plaintiffs Eduardo Alzate, Alberto Salgado, and Joel Guerrero have filed a motion for attorney's fees and costs in which they request $81,272.25 in attorney's fees and $3,512.00 in costs.[1] (Doc. 61 at 15.) Defendants Creative Man Painting, LLC (CMP), Jesus M. Martinez, and Christina Martinez oppose the motion. (Doc. 62.)[2] They argue that any attorney's fees or costs incurred after December 9, 2013 are unreasonable because Defendants offered to resolve this matter on that date, and Plaintiffs refused to participate in settlement discussions. (*Id.*) Defendants argue that Plaintiffs are only

---

[1] This case was initially assigned to the Honorable Judge Neil V. Wake. (Doc. 3.) The parties consented to magistrate judge jurisdiction and, on March 28, 2014, the case was reassigned to Magistrate Judge Lawrence O. Anderson (Docs. 16, 18.) On August 20, 2014, this matter was transferred to Magistrate Judge Bridget S. Bade. (Doc. 39.)

[2] Defendants attached an addendum to their response. (Doc. 62.) For ease of reference, the Court uses the CM/ECF document number and pagination to refer to the exhibits in the addendum. (Doc. 62-1 at 1-27.) Plaintiffs filed exhibits to their motion and reply. (Docs. 61-1, 65-1.) The Court also refers to Plaintiffs' exhibits by the CM/ECF document number and pagination.

entitled to $7,500.00 in attorney's fees and $547.00 in costs. (*Id.*) Plaintiffs filed a reply in support of their motion. (Doc. 65.) For the reasons below, the Court awards Plaintiffs $59,868.50 in attorney's fees, and $2,292.00 in costs.

**I.     Background**

On October 18, 2013, Plaintiffs, house painters employed by CMP, commenced this action. Plaintiffs alleged that they were generally paid their hourly rate for the hours from 7:30 am to 4:00 or 4:15 pm. During those hours, Plaintiffs typically had a thirty minute break, and, therefore, were paid for eight hours a day. (Doc. 1 at 3.) Plaintiffs alleged that they were only paid for the time they were working at the jobsite. (*Id.*) However, Plaintiffs were expected to begin work at CMP's business location at 6:00 am to mix paint, load their trucks, and travel to their jobsite. (*Id.*) They were also expected to return to CMP at the end of the day to clean and store their equipment. As a result, Plaintiffs alleged that they worked an additional two to three hours per day. (*Id.*) Plaintiffs further alleged they were required to work the same schedule on Saturday and were only paid for eight hours on Saturdays. Plaintiffs alleged that Defendants did not pay overtime for hours worked in excess of forty hours per week as required by law. (*Id.* at 4.)

In Count One of the Complaint, Plaintiffs alleged that Defendants violated the Fair Labor Standards Act (FLSA), specifically 29 U.S.C. § 207(a)(1), by failing to pay them one and one-half times their regular rate of pay for hours worked in excess of forty hours in a week. (*Id.*) In Count Two, Plaintiffs alleged that Defendants violated Ariz. Rev. Stat. § 23-351 by failing to timely pay the wages due them. (*Id.* at 5.) In Count Three, Plaintiffs alleged a retaliation claim under the FLSA. (*Id.*) They asserted that Alzate complained about not being paid overtime and that he was terminated based on his complaints. (*Id.*) Plaintiffs also alleged that Defendants retaliated against Guerrero for his complaints about unpaid overtime by reducing his hours and later terminating him. (*Id.*) In Count Four, Plaintiffs alleged wrongful discharge claim in violation of Ariz. Rev. Stat. § 23-1501(3)(c)(ii). (*Id.* at 6.) They alleged that Alzate's and Guerrero's

terminations constituted wrongful discharge in violation of public policy and in violation of Arizona law because each case was motivated by retaliation for complaining of violations of the FLSA. (*Id.*)

Defendants answered the Complaint on December 9, 2013 and denied Plaintiffs' allegations. (Doc. 6) That same day, Defendants offered to settle Plaintiffs' claims for $11,424.32, with each side to bear its own attorney's fees and costs. (Doc. 62-1 at 12-14.) In the letter conveying Defendants' initial settlement offer, defense counsel asserted that even if Plaintiffs prevailed, they could be precluded from recovering attorney's fees and costs it they refused a reasonable settlement offer. (*Id.* at 14.) On January 30, 2014, Defendants sent a second letter reiterating their offer to settle Plaintiffs' claims for $11,424.32, but agreed to submit the issue of Plaintiffs' attorney's fee to the Court. (*Id.* at 16-19.) Defense counsel again asserted that if they could "demonstrate to the court that Plaintiffs unreasonably refused to settle this matter early, an award of fees in [Plaintiffs'] favor is unlikely (even if you prevail)." (*Id.* at 19.)

On March 17, 2014, the parties filed a revised joint proposed discovery plan. (Doc. 14.) The parties stated that they anticipated engaging in discovery, including depositions. (*Id.* at 4-5.) Defendants stated that they had attempted to resolve the matter, but Plaintiffs had refused to participate in any settlement negotiations. (*Id.* at 6.) Plaintiffs stated that Defendants' settlement offers were not made in good faith and that they intended to participate in settlement discussions when the evidence was more fully developed. (*Id.*)

On March 28, 2014, Defendants filed a motion requesting that the Court refer the matter to a magistrate judge for a settlement conference. (Doc. 19.) Plaintiffs did not respond to that motion. On March 31, 2014, the Court set an informal scheduling conference for May 5, 2014. (Doc. 20.) The parties then filed a stipulated motion to continue the scheduling conference and requested that the Court reset it for a date after the settlement conference that Defendants had previously requested. (Doc. 21.) On April

7, 2014, the Court denied Defendants' request for a settlement conference without prejudice as premature. (Doc. 22.)

In their response to Plaintiffs' motion for attorney's fees and costs, Defendants assert that, on March 28, 2014, counsel met with Magistrate Judge Anderson in chambers and requested an early settlement conference, but Plaintiffs refused and the Court declined Defendants' request. (Doc. 62 at 5.) The docket, however, establishes that on March 28, 2014 this matter was still assigned to Judge Wake and that there was a scheduling hearing on that date, in the courtroom with a court reporter. (Doc. 16.) Apparently, Defendants are referring to a scheduling conference before Magistrate Judge Anderson on May 1, 2014. (Doc. 25.) This conference was not recorded and a court reporter was not present.

In September 2014, defense counsel sent an email to Plaintiffs' counsel stating that in May 2014 Plaintiffs had sent Defendants a settlement demand of $91,587.84. (Doc. 65-1 at 17.)[3] On May 19, 2014, "in response" to Plaintiffs' demand, Defendants sent Plaintiffs an offer of judgment to settle all claims for $20,000.00, with the amount of Plaintiffs' attorney's fees to be determined by the Court. (Doc. 62-1 at 24-25; Doc. 65-1 at 17.) On May 20, 2014, Plaintiffs served a supplemental disclosure statement that included a computation of damages. (Doc. 62-1 at 21-23.) Plaintiffs calculated their "wage claim damages" to be "in excess" of $41,000.00, and additional damages for liquidated damages, front pay, and attorney's fees and costs. (*Id.*)

On July 7, 2014, Defendants file a request for a settlement conference and stated that "this Court instructed counsel in chambers that a settlement conference would be

---

[3] Defendants assert that Plaintiffs made their "first" settlement demand for $105,268.00 on September 10, 2014. (Doc. 62 at 5.) Although Defendants do not cite any evidence to support this assertion, Plaintiffs do not dispute this description of the settlement negotiations. However, in a September 4, 2014 email, defense counsel stated that Plaintiffs made a settlement "demand" in May 2014 for $91,587.84. (Doc. 65-1 at 17.) Defendants also assert that in May 2014 Plaintiffs supplemented their disclosures to allege damages in the amount of $91,587.84. (Doc. 62 at 5.) Thus, Defendants' description of the history of the settlement negotiations is confused and it appears they are describing disclosures of damages computations as settlement demands. From the information available, it appears that Plaintiffs made a settlement demand of approximately $105,000.00 in September 2014.

- 4 -

scheduled only after the parties had completed discovery." (Doc. 31.) Therefore, Defendants requested a settlement conference on or after October 1, 2014, after discovery closed. (*Id.*) The Court set the matter for a settlement conference on October 9, 2014. (Doc. 36.) Shortly before the settlement conference, Defendants sent Plaintiffs a second offer of judgment to settle all claims for $55,870.00. (Doc. 62-1 at 26.) The parties agreed to settle the case during that conference and the Court subsequently approved the settlement agreement.[4] (Docs. 54, 58.) The Court ordered that Plaintiffs' counsel could file a motion for attorney's fees and costs. (Doc. 58.)

## II.  Attorney's Fees Under the FLSA

The settlement agreement provides for the payment of damages to Plaintiffs and states that the Court will determine a reasonable award of attorney's fees. (Doc. 57, filed under seal.) The parties agree that, for purposes of determining fees, Plaintiffs are deemed the prevailing party. (*Id.*) The FLSA provides for a mandatory award of reasonable attorney's fees and costs to encourage private litigants to act as "private attorneys general" to enforce FLSA standards.[5] "The amount of the attorney's fees, however, is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984).

Reasonable attorney's fees are generally based on the "lodestar" method. Under the lodestar method, the court determines a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The lodestar figure is presumptively reasonable. *Cunningham v. Cnty. of L.A.*, 879 F.2d 481, 488 (9th Cir. 1988). The Court first considers a reasonable hourly rate for Plaintiffs' counsel.

---

[4] The parties filed the settlement agreement under seal and the settlement amount is confidential. Therefore, the Court does not disclose the settlement amount in this Order.

[5] Plaintiffs are also entitled to reasonable attorney's fees and costs under Ariz. Rev. Stat. § 12-341.01.

### A. Reasonable Hourly Rate

Plaintiffs' counsel states that his hourly rate is $395.00. (Doc. 61 at 12.) He also states that Plaintiffs agreed to pay that rate initially, but soon could not pay that amount. (*Id.*) Counsel states that he agreed to accept $150.00 per hour on the condition that Plaintiffs would owe the remainder. (Doc. 61 at 12 n.1; Doc. 61-1 at 5-6.) Defendants argue that, based on counsel's agreement with his clients, $150.00 is a reasonable hourly rate. (Doc. 62 at 8.) Alternatively, they argue that because counsel's practice is not devoted to employment law, an hourly rate of $395.00 is excessive and should be reduced to no more than $300.00, a rate recently found reasonable in *Riendeau v. Apache Carson Partners LP*, 2013 WL 6728141, at *1 (D. Ariz. Dec. 19, 2013), for a Phoenix attorney who dedicates his practice to employment law. (Doc. 62 at 7.)

Plaintiffs' counsel states that he started practicing employment law in 1995 and that he also practices real estate and business law. (Doc. 61 at 12.) However, as Defendants assert, counsel's website, www.ArizonaRealEstateLaw.net (last visited Feb. 25, 2015), focuses on his practice in real estate and business law, and there is no indication that he specializes in employment law. Thus, it does not appear that Plaintiffs' counsel is a specialist in the area of employment law, and he has not provided sufficient justification for an hourly rate of $395.00. However, the Court declines to reduce counsel's hourly rate to $150.00. Although he agreed to accept that rate during the pendency of the litigation, counsel also intended for Plaintiffs to owe the remainder of his fee. (Doc. 61-1 at 5-6.) The Court considers $300.00 a more reasonable hourly rate in the Phoenix market. *See Riendeau,* 2013 WL 6728141, at *1 (finding $300.00 a reasonable hourly rate for lead counsel in an FLSA case).

### B. Administrative Tasks

Defendants also argue that $300.00 is an unreasonable hourly rate for tasks that counsel completed that could reasonably have been completed by a paralegal. *See Banas v. Volcano Corp.*, 2014 WL 7051682, at *9 (N.D. Cal. Dec. 12, 2014) (stating that preparing binders for distribution and other administrative tasks was not a reasonable use

- 6 -

of a senior associate's time, and reducing attorney's fees accordingly). Although counsel is a solo practitioner, it is not reasonable to bill $300.00 per hour for such tasks. The Court finds $125.00 a reasonable hourly rate for time spent (2.5 hours total) on the following tasks that were administrative in nature: (1) tasks related to service of process performed on 11-13-13 (.40 hour), 11-19-2013 (.30 hour), and 12-5-2013 (.45 hour); (2) emailing discovery answers to Defendants and uploading notice of serving discovery requests on 8-18-14 (.30 hour) and 8-20-14 (.25 hour); (3) checking calendar for discovery deadlines on 8-21-14 (.35 hour); and (4) drafting and emailing deposition notices on 9-10-14 (.45 hour). (Doc. 61-1 at 8-14); *see Riendeau*, 2013 WL 6728141, at *1 (finding $125.00 a reasonable hourly rate for a paralegal in an FLSA case). Accordingly, 2.5 of counsel's hours will be compensated at a rate of $125.00 per hour.

### C.     Hours Reasonably Expended

Plaintiffs' counsel spent 205.85 hours on this case.[6]   (Doc. 61-1 at 8-14.) Defendants argue that the attorney's fees award should be limited to 43.28 hours for the "23.62 hours before filing the complaint, 2.1 hours before the first offer was made by Defendants, and 17.56 hours in mediation and settlement."  (Doc. 62 at 7.)  In other words, Defendants argue that the Court should only award attorney's fees for counsel's work performed before the first settlement offer on December 9, 2013, and for counsel's time spent in mediation and settlement (43.28 total hours). Alternatively, Defendants argue that specific billing entries should be reduced as excessive time spent in client meeting and as impermissible block billing entries.

#### 1.     Hours Expended After Settlement Offers

Defendants assert that attorney's fees should only be award for counsel's work before the first settlement offer and for time spent in mediation and settlement (43.28 hours total). (Doc. 62 at 1, 4-7.) Defendants argue that they made ongoing attempts to resolve the case, but Plaintiffs refused to participate in settlement negotiations and,

---

[6] Defendants state that Plaintiffs' counsel spent 205.75 hours on this case. (Doc. 62 at 8.)  However, the Court's review of the invoice indicates that Plaintiffs' counsel spent 205.85 hours on this matter. (Doc. 61-1 at 8-14.)

- 7 -

therefore, should not recover fees for time unreasonably expended litigating this matter. (*Id.* at 6-7.) Plaintiffs assert that they rejected Defendants' early settlement offers because Defendants denied liability for off-the-clock hours, based their offers on inaccurate time sheets, and offered nothing for the wrongful termination claims. (Doc. 65 at 3-10.) Plaintiffs argue that because Defendants' offers were "paltry," "insulting," and "lowball," they choose to engage in discovery, but that they did not litigate to increase attorney's fees or for any improper purpose. (*Id.* at 3, 5-6.)

To support their argument, Defendants state that they made an offer to settle this matter on December 9, 2013 for $11,424.32, a sum that they believed would compensate Plaintiffs for back wages and liquidated damages. (Doc. 62 at 4; Doc. 62-1 at 12-14.) They argue that Plaintiffs' counsel did not respond to their inquiries until December 20, 2013, at which time he stated that he did not wish to settle the case. (*Id.*; Doc. 62-1 at 9.) On December 20, 2013, Defendants' counsel telephoned Plaintiffs' counsel regarding the settlement offer and Plaintiffs' counsel rejected the settlement offer. (Doc. 62-1 at 9.) On December 31, 2013, Plaintiffs' counsel emailed Defendants' counsel and explained in detail Plaintiffs' rejection of their settlement offer.[7] (Doc. 65-1 at 23-25.) Defendants

---

[7] Defendants assert that the time sheets from Plaintiffs' counsel indicate that he did not discuss the December 9, 2013 settlement offer with his clients until December 23, 2013 (Doc. 61-1 at 9 (12-23-13 entry)), but that in response to an inquiry from defense counsel, on December 20, 2013, he informed them that Plaintiffs rejected the offer. (Doc. 62-1 at 9.) Defendants had stated that the December 9, 2013 offer would remain open for ten days. (Doc. 62-1 at 13-14.)

Apparently, Defendants are suggesting that Plaintiffs' counsel improperly rejected the settlement offer without discussing it with his clients and that this demonstrates improper motives in pursuing the litigation. Defendants' argument is speculative and assumes that Plaintiffs' counsel had not assessed the settlement value of the claims with his clients at earlier stages in the case. In fact, counsel's time sheets suggest that earlier discussions occurred. In particular, the time sheets indicate that counsel's December 23, 2013 discussion with Plaintiffs about the settlement offer addressed the "likelihood that a counter-offer will match our initial estimate." (Doc. 61-1 at 9 (12-23-13 entry).) In addition, the time sheets include an entry on December 11, 2013 in which counsel notes that he reviewed the settlement offer and had a teleconference with the Plaintiffs that same day. (Doc. 61-1 at 8 (12-11-13 entry).) These entries undercut Defendants' arguments that Plaintiffs' counsel did not discuss the settlement offer with his clients in a timely manner.

Furthermore, even if the time sheets are construed to support Defendants' argument, they demonstrate that Plaintiffs' counsel discussed the offer with the Plaintiffs

- 8 -

1  further argue that they made another settlement offer on January 30, 2014, again in the
2  amount of $11,424.32, but in this offer they agreed to submit the issue of attorney's fees
3  to the Court.  (Doc. 62 at 4; 62-1 at 16-19.)  They assert that Plaintiffs' counsel did not
4  respond.  (Doc. 62 at 4.)  The Court finds that Plaintiffs' counsel reasonably rejected this
5  offer without comment as it was the same as the offer the Plaintiffs had already rejected,
6  except for the offer to submit the issue of attorney's fees to the Court.  In addition, as
7  Plaintiffs note (Doc. 65 at 3), the second settlement offer stated that Plaintiffs were
8  overpaid by several thousand dollars and were owed nothing.  (Doc. 62-1 at 17.)  Thus,
9  the second settlement offer did not address the concerns that Plaintiffs had raised in
10 response to the first offer.[8]

11 Defendants further argue that Plaintiffs did not make a settlement demand until
12 September 10, 2014 and that they resisted Defendants' efforts at settlement.  (Doc. 62 at
13 5.)  The record reflects that the Court stated that it would not schedule a settlement
14 conference until after discovery closed on September 30, 2014.  (Doc. 31 at 1.)
15 Considering the Court's apparent belief that discovery would help the parties resolve the
16 issues, it was reasonable for Plaintiffs' counsel to wait until closer to the end of discovery
17 to participate in settlement negotiations.  Additionally, the record reflects that the case
18 was settled after a single settlement conference with Magistrate Judge Duncan.  (Doc. 54)

19 In addition, while Defendants repeatedly asserted their view that Plaintiffs were
20 rejecting reasonable settlement offers and therefore may not recover attorneys' fees
21 (Doc. 14 at 6; Doc 62-1 at 14, 15, 19; Doc. 65-1 at 64), Plaintiffs explained in the earliest

---

and provided a detailed explanation of Plaintiffs' decision to reject the offer within approximately three weeks of the date of the offer.  This timing establishes only that Plaintiffs' counsel did not appear to feel compelled to respond to the offer by the Defendants' expiration date and, when apparently pressed for an answer within that time frame, rejected the offer.  This timing does not establish that Plaintiffs' counsel rejected a reasonable settlement offer and unnecessarily prolonged litigation.

[8] Defendants also argue that Plaintiffs' counsel did not timely submit the required initial disclosures to inform Defendants about the damages Plaintiffs were seeking. (Doc. 62 at 4.)  This argument does not support denying attorney's fees.  The record reflects that the parties agreed to extend the time for Plaintiffs to produce their initial disclosures to February 17, 2014.  (Doc. 10 at 4-5.)

- 9 -

stages of the discussions that they did not consider Defendants' offers reasonable. (Doc. 65-1 at 23-25; Doc. 14 at 6.) In a December 31, 2014 email, in response to Defendants' first settlement offer, Plaintiffs' counsel stated:

> [a]t the risk of sounding like a pessimist, based upon the points your client asked you to raise in your December 9, 2013 letter, I predict that due to his unreasonableness and intransigence, we will be locked in protracted and wallet busting litigation for the next year or longer. That said, please be aware that until formal discovery has occurred, the plaintiffs are unlikely to entertain another lowball settlement offer. They will however consider a reasonable offer, should one be made that takes into account the points raised in this email.

(Doc. 65-1 at 24.) Therefore, Defendants' repeated assertions that Plaintiffs were rejecting reasonable settlement offers, do not establish that the offers were reasonable. The case settled for a confidential amount that was significantly more than Defendants' settlement offers and offers of judgment. Therefore, the Court finds that the Plaintiffs did not reject reasonable settlement offers and expend unreasonable time in litigation.

Furthermore, even if the Court assumes that Plaintiffs' counsel did not fully participate in early efforts to settle this matter, the record does not support reducing the attorney's fee award to allow only hours that counsel expended before the first settlement offer and hours expended during settlement and mediation. Defendants' reliance on *Orozco v. Borenstein*, 2013 WL 4543836, at *2 (D. Ariz. Aug. 28, 2013), is misplaced. In that case, the defendant-employer reimbursed plaintiff, and fifty-one current and former minimum-wage employees, for fees deducted from their paychecks in the two years preceding the filing of the lawsuit, as well as an additional equal amount as liquidated damages, in full satisfaction of all asserted violation. *Id.* The court found that plaintiff was entitled to a limited award of attorney's fees because plaintiff pursued meritless claims "despite clear evidence that plaintiff and the putative class had been fully compensated." *Id.*

Here, in contrast to circumstances in *Orozco*, there is evidence that the parties disputed the facts underlying Plaintiffs' claims (Doc. 65-1 at 23-25, 29-31; Doc. 62-1 at

12-14, 16-19), that they anticipated conducting discovery (Docs. 10, 14), that the Court declined to set a settlement conference until after discovery closed on September 30, 2014 (Doc. 31 at 1), and that the case settled for significantly more than Defendants' settlement offers. Therefore, the Court will not reduce counsel's compensable hours in the manner Defendants have requested. (Doc. 62 at 4-7.) However, the Court considers Defendants' alternative arguments regarding the reasonableness of the hours billed for certain tasks.

### 2. Meeting with Clients

Defendants assert that Plaintiffs' counsel spent an excessive amount of time meeting with his clients. Excessive or unnecessary time is not compensable. *See Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983)). Defendants assert that Plaintiffs' counsel billed 59.60 hours for meeting with his clients. (Doc. 62-1 at 2-8.) Defendants argue that 59.60 hours, or nearly thirty percent of total number of hours expended, is an unreasonable amount of time spent meeting with clients. (Doc. 62 at 8.) Defendants propose reducing this number to twenty hours. (*Id.* at 8-9.) Plaintiffs generally argue that the requested attorney's fees are reasonable, but do not specifically respond to this argument. (Doc. 65 at 11.)

The billing records reflect that Plaintiffs' counsel met with his three clients to discuss their claims, the evidence supporting their claims, the discovery requests and responses, the elements of their claims, settlement offers, and to prepare for depositions. (Doc. 61-1 at 8-14.) Time spent on these tasks was reasonable, especially considering that counsel represented three clients. However, one of the client meetings appears to be an unnecessary status meeting. This entry includes reviewing the joint case management plan (2-14-14 entry, 1.25 hours). (Doc. 61-1 at 9.) Accordingly, the Court reduces the total number hours by 1.25 hours.

### D. Block Billing

Defendants also argue that Plaintiffs' counsel billed 92.5 hours in entries that include block billing that makes it difficult to discern the reasonableness of the fees claimed. (Doc. 62 at 9.) Defendants argue that hours contained in block billing entries should be substantially reduced, but do not specifically identify the number of hours that should be excluded. (*Id.*) Block billing violates the Court's local rules. *See* LRCiv 54.2(e) (stating that the itemized statement of attorney's fees should include the "time devoted to each individual unrelated tasked performed . . . .") Because the time billed on the following dates does not relate to a single task, the Court will, reduce the attorney's fees for hours billed on those dates by ten percent. *See* LRCiv 54.2(e)(1)(B); (12-11-13 (.65 hour); 2-15-14 (1.5 hours); 7-25-14 (2.75 hours); 8-28-14 (.60 hour); 9-7-14 (.75 hour); 9-9-14 (.75 hours); 9-11-14 (3.75 hours); 9-17-14 (4.5 hours); 9-20-14 to 9-21-14 (9.5 hours); 9-22-14 (8.5 hours); and 9-24-14 (2.55 hours). Plaintiffs' counsel billed a total of 35.8 hours on these dates. The ten percent reduction reduces the total number of hours by 3.58 hours. This reduction is permissible under the Court's local rules. *See Schrum v. Burlington N. Santa Fe Ry. Co.*, 2008 WL 2278137, at *9 (D. Ariz. May 30, 2008) (applying ten percent reduction to attorney's fees for violating the Court's local rule regarding specificity of billing descriptions).

### E. Preparing the Fee Application

Plaintiffs' counsel seeks attorney's fees for hours spent preparing the fee application. (Doc. 61-1 at 8-14 (11-6-14, 11-9-14, and 11-10-14 entries).) Defendants argue that they did not agree to pay the attorney's fees for this process. (Doc. 62 at 10.) Attorney's fees are mandatory under the FLSA and Defendants have not cited any authority to support the exclusion of such fees from the attorney's fees award. In addition, the settlement agreement does not state that Plaintiffs' fee application cannot include time spent preparing the application. Accordingly, the Court does not reduce the attorney's fees for the hours spent preparing the fee application.

### F. Summary of Attorney's Fees

In summary, for 2.5 hours spent on administrative matters, the Court finds $125.00 a reasonable hourly rate and awards Plaintiffs' $312.50 for time spent on these matters. The Court finds $300.00 an hour a reasonable rate for counsel's remaining 198.52 hours (as modified by this Order deducting 2.5 hours for administrative matters, deducting 1.25 hours for unnecessary client meeting, and deducting 3.58 hours for improper block billing). The Court awards $59,556.00 for these hours ($300.00 x 198.52 = $59,556.00). Accordingly, the Court awards a total of $59, 868.50 ($312.50+ $59,556.00 = $59,868.50) in attorney's fees.

### III. Taxable Costs

Defendants also argue that Plaintiffs' requested costs should be reduced. (Doc. 62 at 9.) Plaintiffs seek to recover the $400.00 filing fee, $147.00 for service of process, costs related to depositions and transcripts for Martinez ($987.90), Velasquez ($210.00), and Juan Cruz ($547.10), costs for an interpreter ($700.00), and copying costs ($520.00). (Doc. 61-1 at 14.) Defendants characterize these as non-taxable costs. (Doc. 62 at 9.) However, according to Local Rule of Civil Procedure 54.1(e)(1) and (3), these are taxable costs. Because Defendants object to the requested costs, the Court considers Plaintiffs' request for taxable costs and the objections.

### A. Filing and Service of Process Fees

Defendants do not dispute that the filing and service fees are recoverable. (Doc. 62 at 9.) However, Defendants argue that Plaintiffs did not provide any evidence of payment of those expenses, and therefore, the Court should deny those expenses for failure to comply with LRCiv 54.2(e)(3). (*Id.*) Plaintiffs' counsel has submitted evidence to support payment of the filing fee and the service fee. (Doc. 65-1 at 66-68.) Accordingly, the Court awards Plaintiff's costs for the filing fee and service of process ($547.00).

**B.     Depositions Costs**

Defendants also argue that the Court should deny Plaintiffs' request for $1,745.00 in deposition-related costs because counsel did not document those expenses. (Doc. 62 at 9; Doc. 61-1 at 14 ($987.90 for J. Martinez deposition; $210.00 for M. Velasquez deposition; and $547.10 for Juan Cruz deposition).) In response, Plaintiffs' counsel submitted (1) an invoice dated October 7, 2014 in the amount of $987.90 related to the Martinez deposition and transcript; (2) a September 24, 2014 invoice for the Velasquez deposition ($210.00 for 3.5 hours); (3) a September 24, 2014 invoice for the Cruz deposition ($210.00 for 3.5 hours), (4) and an October 31, 2014 invoice in the amount of $337.10 for a transcript of the Cruz deposition. (Doc. 65-1 at 69-72.) Thus, Plaintiffs' counsel has adequately documented the expenses related to the requested deposition and transcript costs.

Defendants also argue that the three depositions were not necessary and argue that Plaintiffs did not request transcripts of the depositions until after the case settled, thus, the deposition transcripts were not "necessarily obtained for use in the case." (Doc. 62 at 10); *see* LRCiv 84.1(e)(a)(3). The Court disagrees with Defendants' argument regarding the necessity of the depositions. Plaintiffs' counsel reasonably deposed the three individuals to verify information he had obtained from his clients and to assess the strength of their case. (Doc. 65 at 6-7.) Additionally, it was reasonable for counsel, who was able to assess the deposition testimony as it was given, not to request deposition transcripts until he thought they were necessary to support the motion for attorney's fees and expenses. Although it appears that the deposition transcripts were obtained after the case settled, they were still used in the case to support the requested attorney's fees. Accordingly, the Court awards Plaintiffs $1,745.00 for deposition related costs.

**C.     Interpreter Costs**

Plaintiffs' counsel also requests $700.00 in costs for an interpreter. (Doc. 61-1 at 14.) This fee may have been for an interpreter for two of the depositions, and therefore, a taxable cost under LRCiv 54.1(e)(3). However, despite Defendants' objection to

- 14 -

Plaintiffs' costs as undocumented, Plaintiffs have not provided any evidence to substantiate their request for these costs. Accordingly, the Court denies this request for failure to comply with Local Rule 54.1(a).

### D. Copying Costs

Finally, Plaintiffs seeks $520.00 in costs for copies. (Doc. 61-1 at 14.) Defendants argue that these costs are not documented and that copies are part of counsel's overhead and are not recoverable unless compensating Plaintiffs for sums paid. (Doc. 62 at 10.) Local Rule of Civil Procedure 54.1(e)(5) provides that the reasonable cost of certain types of copies is taxable. However, Plaintiffs do not specifically describe the nature of the copies requested and, despite Defendants' objection to these costs as undocumented, have not provided any evidence to support the copying costs. Accordingly, the Court denies the request for copying costs.

In summary, the Court awards Plaintiffs' costs for the filing fee ($400.00), service of process ($147.00), and depositions and related transcripts ($1,745.00), for a total of $2,292.00 in taxable costs.

### IV. Parties Responsible for Award of Fees and Costs

Defendants argue that the settlement agreement provides that attorney's fees and costs will be paid by CMP, not the individual Defendants. (Doc. 62 at 10.) Plaintiffs argue that the settlement agreement does not limit the payment of attorney's fees in that manner and that the attorney's fees award "must be against Mr. and Mrs. Martinez personally." (Doc. 65 at 11.) Both Defendants and Plaintiffs rely on paragraph 1 of the settlement agreement to support their positions and do not cite any other authority to support their construction of the settlement agreement. (Doc. 57, filed under seal.)

Paragraph 1 of the settlement agreement is labeled with the heading "CMP's Payments," and it includes four subparagraphs, with subheadings that are labeled: "a. Payment to Plaintiffs"; "b. Payment of Fees and Costs"; "c. Confidentiality"; and "d. Non-Disparagement." (*Id.*) Defendants apparently argue that because subparagraph 1(b), "Payment of Fees and Costs," is under the heading for paragraph 1, "CMP's

1 Payments," that means the settlement agreement "provides that attorneys' fees will be
2 paid only by Creative Man Painting, not the individual defendants." (Doc. 62 at 10.)
3 Plaintiffs argue that while subparagraph 1(a) explicitly states that CMP will make
4 specified payments to each Plaintiff, designated in part as wages and miscellaneous
5 income, subparagraph 1(b) does not include this language. (Doc. 65 at 11.) Plaintiffs are
6 correct.

7 Subparagraph 1(b) provides that Plaintiffs will file a motion for attorney's fees and
8 costs and that the Court will determine the appropriate amount for any award of fees and
9 costs. (Doc. 57.) However, subparagraph 1(b) does *not* indicate whether CMP or other
10 Defendants will be pay that award. (*Id.*) Thus, Defendants' argument appears to construe
11 the settlement agreement based on its structure, specifically the labeling of the headings
12 and the placement of subheadings. Under Defendants' apparent construction, the label
13 for the heading on paragraph 1, "CMP's Payments," has substantive meaning and it
14 applies to all subparagraphs, 1(a) through 1(d). This construction, however, is not
15 supported by the structure or the substance of the settlement agreement.

16 First, subparagraphs 1(c), "Confidentiality," and 1(d), "Non-Disparagement,"
17 provide that Defendants (not just CMP) will not publicize or disclose the settlement or
18 the settlement amount, and will refrain from uttering disparaging words. (*Id.*) These
19 subparagraphs do not address any payments by CMP or any other Defendants, and
20 substantively applying the heading "CMP's Payments" to these subparagraphs would be
21 nonsensical. Defendants may be arguing that the heading for paragraph 1, "CMP's
22 Payments" applies only to subparagraphs 1(a) and 1(b), which relate to payments of the
23 settlement amount and attorney's fees. However, that argument would fail because
24 Defendants have not argued, nor does the language of the settlement agreement provide,
25 any basis to distinguish between the subparagraphs and substantively apply the heading
26 for paragraph 1 only to subparagraphs 1(a) and 1(b).

27 Second, paragraph 5(g) of the settlement agreement explicitly states that "the
28 headings are inserted for convenience of the parties only." (*Id.*) Therefore, it appears

that the parties did not intend for the heading labels to have substantive meaning. Thus, construing the heading for paragraph 1, "CMP's Payments," to apply substantively to subparagraph 1(b), which is silent as to the identity of the Defendants who will pay the award of attorney's fees, is contrary to paragraph 5(g) of the settlement agreement.

Third, at paragraph 2(a)(xii), the settlement agreement provides that Plaintiffs will release and discharge the "Released Parties" from "claims for recovery of attorney's fees and costs." (*Id.*) The "Released Parties" are defined to include, in part, "Defendants," not just CMP. Although this subparagraph does not identify which Defendants will pay the award for attorney's fees and costs, it does provide that Plaintiffs will release and discharge *all* Defendants, including CMP and Mr. and Mrs. Martinez, from any claims for attorney's fees and costs. Therefore, because the settlement agreement does not identify the Defendants who will pay the award for attorney's fees and costs, but releases all Defendants from such claims, the Court concludes that the most reasonable construction of the settlement agreement is that all Defendants, not just CMP, will be responsible for the award of fees and costs.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Attorney's Fees and Expenses (Doc. 61) is **GRANTED** to the extent that Plaintiffs are awarded $59,868.50 in attorney's fees, and $2,292.00 in costs.

**IT IS FURTHER ORDERED** that the parties will file a stipulation to dismiss this matter with prejudice within thirty days of the date of this Order. If the parties do not file a stipulation of dismissal within that time, the Court may dismiss this matter on its own motion without further notice.

Dated this 25th day of February, 2015.

_____
Bridget S. Bade
United States Magistrate Judge